# Commonwealth *against* Snyder.

In order to entitle an applicant under the act of 9th of April 1827, for damage done to his lands by reason of the construction of the Pennsylvania Canal, it is not necessary that the canal should pass through his land ; any injurious interference with his property is a good ground upon which to found his application.

When a report has been made under that act by three of the five viewers appointed, which was confirmed by consent, it will not be set aside on the exception that all the viewers should have been upon the ground.

*CERTIORARI* to the quarter sessions of *Union* county.

This was an application by John Snyder for the appointment of viewers, to ascertain the damage done to him by reason of the construction of the Pennsylvania Canal, and the appointment and report of those viewers : all the facts of which are fully stated by his honour who delivered the opinion of the court.

*Lashels,* for the commonwealth.
*Greenough,* contra.

The opinion of the Court was delivered by

KENNEDY, J.—The proceedings in this case are founded upon the eighth section of the act of assembly, passed the 9th of April 1827, entitled " an act to provide for the further extension of the Pennsyl-

vania canal." That part of the section under which they were commenced is in the following words, " that if any person shall consider himself aggrieved by reason of the canal passing through the lands of which he is owner, or *by interfering in any manner with his rights of property,* he may at the completion of the work thereupon, or within one year thereafter, petition the court of quarter sessions of the county in which the damage has been committed, and the said court shall appoint five respectable citizens within the judicial district of which the county is a part, and not residing in or inhabitants of the said county, whose duty it shall be, after being severally sworn or affirmed, to view the premises, and after taking into consideration the advantages of said canal to the petitioner, report such damage, if any, as they or *any three of them* shall think the owner has sustained by said canal. And, upon the approbation of the said court to the report of the said viewers, and the certificate of the prothonotary to the amount, the acting canal commissioner shall, and he is hereby required to pay to the said petitioner the full amount of damages and costs assessed as aforesaid."

Two exceptions have been taken by the counsel here for the Commonwealth; the first of which is, " that the court of quarter sessions had no jurisdiction of the matter complained of, and particularly at the time and in the name the application was made."

It appears that a report was made by three of the five viewers appointed in this case on the 12th of May 1829, and on·the 18th of the same month was read in the court of quarter sessions, and confirmed *nisi;* and that on the 16th of September following it was read again and confirmed *by consent,* without any objection ever having been made. It seems somewhat inexplicable that these proceedings should have been removed into this court by the Commonwealth for the purpose of getting them set aside or quashed, after having assented to their confirmation in the court of quarter sessions. It is a circumstance which is not to be wholly overlooked, and' ought, I think, to be considered sufficient to raise the presumption that the proceedings are all regular so far as the contrary does not appear on their face, or has not been otherwise proved and shown. Then how does it appear that the court of quarter sessions had no jurisdiction ? As regards the subject matter of the complaint it is clearly embraced by the terms of the act. It is not necessary, as has been contended, that the canal should pass through or touch the land of the complainant to entitle him to redress ; if he has been injured in his rights of property by it, the act has given him the remedy which has been adopted and pursued in this case. The words of the act are, " if any person shall consider himself agrieved by reason of the canal *interfering in any manner with his rights of property,* he may at the completion of the work, or within one year thereafter, present his petition to the court of quarter sessions, &c." Now the injury set forth by the petitioner is, that, by the erection of a dam across the mouth of Penn's creek for the use of the canal, the water of this creek

[Commonwealth v. Snyder.]

was forced into Back creek, which caused the water of the latter to be greatly raised and thrown back upon the paper mill of the petitioner, situated above upon this stream, so as to deprive him of the use of it for six weeks, &c. ; which was, if true, most incontestably an *interference with his rights of property.* Then as to the time at which the petition was presented to the court of quarter sessions, it is stated in it, that that part of the canal which interfered with the petitioner's rights of property was completed within the year preceding, which brings him within the time prescribed by the act, according to what I conceive to be the true spirit and meaning of it, for presenting his petition. For a more full discussion of this point I would refer to the opinion delivered in the cases of the Commonwealth against Fisher and several others, decided by this court during the late term at Harrisburg (ante, p. 190). There is no weight in the objection that the application for redress is not in the proper name. The act of assembly in express terms authorises the owner of the property injured to petition ; and John Snyder being the owner of the property injured in this case was therefore the proper person to petition the court for redress, and why he *should not do it* in his own name I am at a loss to conceive.

The second exception is " that only three of the viewers met and made report." That the report of any three of the viewers is made sufficient by the express terms of the act can admit of no doubt, but the question intended to be raised by this exception is, whether they ought not all to have viewed and consulted together ? In answer to this it may be observed in the first place, that it does not appear any where from the face of the proceedings that they did not all view and confer together on the subject of the complaint. For aught then that appears on the record the viewers may have all viewed in company, and I think the contrary ought not to be intended after a confirmation of the proceedings by the court of quarter sessions with the consent of the Commonwealth, or the person authorised to act in the matter on her behalf. If the fact be that only part of the viewers met and viewed, I think it lay upon the Commonwealth *to show* it, after having admitted in effect that the proceedings were regular, or at least that she had no objection to them. But I would observe, in the second place, that I am not satisfied that the legislature intended that all the viewers should meet and view together in company ; because, if they did so intend, the insertion of the words " or any three of them," in the section of the act already recited, was unnecessary ; for without these words the construction of the act would have been precisely such as is contended for by the counsel for the Commonwealth according to the principles laid down by this court in the case of the Baltimore Turnpike, 5 *Binn.* 481 ; where it was held that the report of *five* of six viewers assessing and allowing damages under the act of assembly in that case was good, it being shown by affidavit that all had viewed, although the words of the act are, "the court shall appoint *six disinterested persons to view and*

*adjudge the amount of the damage so done,* which, if approved of by the court, shall be paid by the company." Hence I am inclined to think that the legislature intended by the introduction of the words "or any three of them," to give a different operation to their act from what it otherwise would have had ; and, if so, the only change that these words can produce in the operation or effect of the act, is to make the *view* and *report* of any three of the viewers good.

The proceedings in this case are affirmed.